Leonard R. Berman
9220 SW Barbur Blvd., Suite 119, Box 180
Portland, OR 97219
(503) 516-3715
OSB # 96040
Easyrabbi@yahoo.com
<u>ATTORNEY FOR PLAINTIFF(S)</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JANICE EDWARDS, On Behalf of Minor J.E., CYNTHIA ECHAURI, On Behalf of Minor, A.E, Individually and on behalf of a class of others, similarly situated, | Case No. 3:19-cv-240AC |
| Plaintiff(s), | **AMENDED CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |
| v. | |
| YAMHILL COUNTY,<br>TIM SVENSON, Personally,<br>JESSICA BEACH, Personally,<br>SCOTT PAASCH, Personally, | |
| Defendants. | |

## **INTRODUCTION**

This is a class action brought to redress the deprivation by Defendants of rights

secured to the Plaintiff(s) and proposed Class by the United States Constitution and the

1  AMENDED CLASS COMPLAINT

laws of the United States of America.  For at least the past several years, the Yam hill County Juvenile Detention Center has had a policy of depriving juveniles of basic rights, nutrition, water, rest, minimal sleep accommodations, and compelled exercise and draconian physical discipline and punishment for non-threatening limb movements or direct eye contact with staff, denial of medications, and verbal harassment and demeaning insults for all who enter the Yamhill County Juvenile Detention Center (hereinafter "YCJDC") regardless of charge. Upon information and belief, this policy is, in part, derived from the written procedures of the aforementioned County Departments, and was promulgated by senior Department officials; named individually above.

In short, the policy of Yamhill County and  County's Juvenile Department of forcing minor detainees with indignities, physical and emotional abuse upon entry into the YCJDC is not only clearly illegal, but is degrading, insensitive and unnecessary.

Former minor and detainee J.E., and current  minor A.E, through their parent/ guardian, Jan Edwards, and Cynthia Echauri, and bring this action on behalf of themselves, and on behalf of a class of hundreds if not thousands of other minors or former minors who were  mistreated on a daily basis,  indicating the clear and unnecessary violation of their civil rights and those of the class members they propose to represent.  For example, minor J.E. was taken into custody.  He was denied proper nutrition, was always  hungry, denied a pillow or the right to lay down on his "bed" during the day, compelled to do strenuous exercise twice daily, disciplined if he looked directly at staff, physically restrained if he raised his arms above his head and disciplined, forced to do exercise, threatened with discipline for benign behavior, intimidated  and

humiliated by staff.  A.E. suffered similar indignities including loss of weight, hunger, limited toiled paper slid under the door, no proper feminine hygiene materials, waiting up to an hour for soft soap after toilet visits.

They were transported to the YCJDC and were subjected to multiple deprivations and indignities, as pre-trial detainees, and as sentenced residents (J. E.) in violation of their rights against unreasonable seizure under the Fourth and Eighth Amendment of the United States Constitution.  J.E. , A.E.  and the proposed  class seek monetary damages for themselves and each member of the proposed class, a declaration that the YCJDC Department's policies/practices are unconstitutional, and an injunction precluding Yamhill County from continuing to violate the rights of those placed into their custody.  With this as a background, Plaintiff  J.E and A.E. hereby complain as follows:

## JURISDICTION

1. This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 & 1343 because it is filed to obtain compensatory damages, punitive damages, and injunctive relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. §§ 1981 & 1983.  This Court also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201, as it is filed to obtain declaratory relief relative to the Constitutionality of the policies of a local government.

2. Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiffs' claims and those of proposed class members occurred in this judicial district.

## PARTIES

3. Plaintiffs reside in Yamhill County, Oregon. Defendant Yamhill County (the "County") is a county government organized and existing under the laws of the State of Oregon. At all times relevant hereto, the County, acting through its Juvenile Department, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the YCJDC and was responsible for the appointment, training, supervision and conduct of all Department personnel, including those working in the YCJDC. In addition, at all relevant times, the County was responsible for enforcing the rules of the YCJDC, and for ensuring that Juvenile Department personnel employed in the YCJDC obey the Constitution and laws of the United States and of the State of Oregon.

4. Defendant Tim Svenson is the Yamhill County Sheriff. Defendant Jessica Beach is the director of Yamhill County Juvenile and Defendant Scott Paasch is the Division Manager overseeing the YCJDC, and, as such, are jointly policy makers with respect to the treatment of pre-trial and other detainees over which the YCJDC exercises custodial or other control. They are made Defendants in this action in both their individual and official capacities. Collectively, Ms. Beach, Mr. Svenson and Mr. Paasch will be referred to as the "Policy Making Defendants."

## CLASS ACTION ALLEGATIONS

5. Plaintiffs bring this action pursuant to Rules 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals who were charged with misdemeanors or minor crimes and entered into the respective County Jails.

6. The classes that Plaintiffs seek to represent are defined as follows:

All persons who have been or will be placed into the custody of the Yamhill County Juvenile Detention Center (YCJDC) after being charged with misdemeanors, felonies, violations, civil commitments, non-drug, non-weapon offense or other minor crimes and were or will be:

1. Denied adequate and proper nutrition to maintain weight, leading to hunger pangs and even weight loss;
2. Denied proper cell conditions including but not limited to; a pillow, sufficient blankets, proper heating/cooling, visible window to outside, right to rest on bed during day/ when ill, right to cover eye to shield light at night;
3. Denied proper medication and/or medical, dental, psychological hygiene (feminine and generic soap and toilet paper) treatment;
4. Denied First Amendment Freedom of Speech and Expression including but not limited to : the right to look at and speak to staff and fellow detainees without discipline, the right to non-threatening bodily movements such as scratching one's head or face without discipline, and denied the right to write or journal whatever they choose, including disdain for conditions of confinement;
5. Denied the right to appropriate, safe, non-humiliating , non-threatening, and non-intimidating treatment by staff in word and deed;

All these deprivations and indignities in YCJDC were pursuant to the policy, custom and practice of the Yamhill County Juvenile Detention Department. The class period commences for males on February 17, 2017 and November 15, 2017 for females and extends

5  AMENDED CLASS COMPLAINT

to the date on which Yamhill County is enjoined from, or otherwise cease, enforcing their unconstitutional policies, practices and customs of conducting demeaning, deprivatory conditions of confinement. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

7. This action has been brought and may properly be maintained as a class action under Federal law and satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

8. The members of the class are so numerous as to render joinder impracticable. Upon information and belief, there are hundreds of people arrested for misdemeanors, violations and non-drug, violence or weapon offenses who are placed into the custody of the YCJDC every month – all of whom are members of the proposed class. Upon information and belief, the size of the proposed class totals at least 500 individuals, some of whom have had their civil rights violated on multiple occasions.

9. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of class members and the fact that class members are likely dispersed over a large geographical area, with some members presently residing outside of the County and this Judicial District. Furthermore, upon information and belief, many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

6  AMENDED CLASS COMPLAINT

10. Common questions of law and fact exist as to all members of the Class, in that they all had their right to be free from unreasonable searches violated by Defendants' conducting strip searches absent particularized suspicion. All members of the class were charged with misdemeanors or violations or non-drug, non-weapon felonies when placed into the custody of their YCJDC, and suffered deprivations of their rights as a result of their conditions of confinement in violation of the clearly established law in this judicial circuit.

11. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the class sustained damages arising out of Defendants' course of conduct. The harms suffered by the Plaintiffs are typical of the harms suffered by the class members.

12. The representative Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are adverse to the interests of the members of the Class.

13. Plaintiffs have retained counsel who has substantial experience and success in the prosecution of civil rights litigation and some class litigation experience.

14. Counsel for Plaintiff knows of no conflicts among members of the class, or between counsel and members of the putative class.

15. This action, in part, seeks declaratory and injunctive relief. As such, the Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(2), in that all class members were subject to the same policy of demeaning and unconstitutional

deprivations, discipline and sub-standard conditions of confinement and placed into the custody of the YCJDC. In short, the aforementioned County Departments, the Policy Making Defendants and County Corrections Officers acted on grounds generally applicable to all class members.

16. In addition to certification under Rule 23(b)(2), and in the alternative, Plaintiffs seek certification under Rule 23(b)(3).

17. Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class. These common questions of law and fact include, without limitation, the common and predominate question of whether the Defendants' written and/or *de facto* policy/ practice or policy of demeaning and unconstitutional deprivations, discipline and sub-standard conditions of confinement while in the YCJDC is a violation of the Fourth and Fourteenth Amendments to the United States Constitution, and whether such a written and/or *de facto* policy existed during the class period.

18. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the class is impracticable given the large number of class members and the fact that they are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court

system. By contrast, the conduct of this action as a class action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

19. Upon information and belief, there are no other actions pending to address the Defendants' flagrant violation of the civil rights of thousands of individuals, even though the Defendants have maintained their illegal strip search regimen for the past several years.

20. In the alternative to certification under Fed. R. Civ. P. 23(b)(3), Plaintiffs also seek partial certification under Fed. R. Civ. P. 23(c)(4).

## FACTS

### Facts Applicable to the Class Generally

21. The Fourth Amendment of the United States Constitution prohibits state officials, such as the Policy Making Defendants in this action and the Corrections Officers they supervise, from detaining pre-trial juveniles in a manner that Unreasonable and involves excessive force and/or gross mistreatment. The Eighth Amendment prohibits related Cruel and Unusual Punishment for sentenced juveniles. Upon information and belief, the YCJDC and the Policy Making Defendants have instituted a written and/or *de facto* policy, custom of draconian, demeaning and unconstitutional deprivations, discipline and sub-standard conditions of confinement and all individuals who enter the custody of their YCJDC. Such policies are

excerpted below from the Yamhill County Detention Handbook provided to all juveniles:

**Expectations of me while I am detained**

1. I will follow all staff directives without arguing or questioning. If I do have questions, I will wait until an appropriate time to ask. If I have a question, I will raise my hand out to the side **BELOW** my waist and wait for staff to respond.

2. I will be respectful and courteous to all staff, peers, and others that I may have contact with.

3. I will address staff, peers and others correctly. I will address staff and other adults by Sir/Ma'am or Mr. /Ms. I will address my peers by their names; I will not use nicknames, street names, or other names.

4. For my safety and the safety of others, I will not bring my hands above my waist without staff permission.

5. If I refuse to follow staff directives or the rules of the program, I may face disciplinary action(s) such as a verbal warning, thinking report, consequence, Individual Program (IP), and/or lose privileges.

6. I will not have any, or what appears to be, physical contact with any staff member or peer.

7. I am aware that racial and sexual harassment and/or intimidation are not allowed in the program. I am aware that if I engage in that type of behavior I can be placed on IP and/or receive a new law violation(s).

8. I will not engage in any gang related behavior. I will not front, throw signs, whistle, tag, and/or posture while in this program.

9. I am to remain silent until I am given permission to speak.

10. When I am allowed to speak, I will keep my conversations appropriate. I will not war story (talk about why I'm here, who I know on the outs, criminal acts, alcohol/drugs, sex, partying, previous placements and/or other negative topics). I will not use inappropriate language.

11. I will **NOT** engage in nonverbal communication (i.e. smiling, waving, winking, mouthing words, etc.) with my peers.

12. I will not possess any contraband. Contraband is any illegal substances, food items, paper clips, excess toilet paper, or any item that has been altered or misused.

13. I will not write or pass notes to my peers. I will not exchange phone numbers, addresses and/or, social media site(s) with my peers.

Case 3:19-cv-00240-AR   Document 13   Filed 11/15/19   Page 11 of 20

14. I must fill out a contact request form to speak with my attorney and/or probation officer. Detention staff will only contact my attorney and/or probation officer once a day so there is no need to ask more than once.

15. It is my responsibility to notify staff when I am not feeling well. I understand that in order to receive medical services I must fill out a medical request form also known as a medical kyte prior to medical staff arriving on the unit.

**While I am in the facility**

1. I will move only when directed to by staff.

2. When I am in the day area, I will walk on the red tiles to move and I will move in a straight line from one point to another. I will not use the green tiles or move in diagonals unless I am directed to by staff.

3. I will not look around while I am in the facility. My eyes will remain focused on the assigned task that I am given. If staff want me to know what is going on they will tell me.

4. I will keep my hands down to my sides, my fingers on the seam of my pants **BELOW** my waist and I will be on silence while I am moving and/or lining up. I will not move on the wall/window, look around or non-verbal during line movements or when I am lining up. I am **NOT** to ask questions when lining up or during line movements.

5. I will say "Excuse me staff" to announce my presence to staff, I will wait for an acknowledgement from staff before I continue. I will **NEVER** walk behind staff.

6. I will not touch, open or close any door, cabinet, or any of the items in the cabinet without staff permission.

7. I will not touch the fire alarms or sprinkler systems. Any attempt to touch, manipulate or misuse the alarms/systems can result in disciplinary actions and/or new law violations.

8. I will return all materials (i.e. spoon, pencil, etc.) staff gives me. If I notice any damage to the items I will notify staff immediately.

9. I will not cover my head and hands with anything while I am in detention. Staff needs to see my head and hands at all times, this includes when I am sleeping.

10. I will receive two stamps a week to send out personal mail.

**While I am in my room (see the diagram for how I am to keep my room organized)**

1. It is my responsibility to keep my room clean and neat at all times. I understand that my room and the items in my room are subject to search at any time.

11  AMENDED CLASS COMPLAINT

2. In the morning after the wake-up call, I will get up, place my bedding on my bunk and wait for staff instructions. Afterward, I will fold my bedding and place it in its designated location. My bedding must be visible from my room door.

3. Any time staff kicks my door, I will sit in the middle of my bunk, with my hands on my knees, and I will look straight ahead and wait for staff instructions.

4. I will **NOT** look out my room or door window at any time. I will **NOT** attempt to talk to anyone when they walk by my door. I will use my flag to communicate my needs to staff.

5. I will only use my **INTERCOM for EMERGENCIES**. I will use my room **FLAG for NON-EMERGENCIES** such as toilet paper, contact requests, feminine hygiene products, and for medical requests only.

6. Before I enter my room, I will make sure to leave my sandals next to my room door, unless staff directs me to keep them on.

7. I will **NOT** cover or plug my door, windows, intercom, or camera with anything.

8. I will **NOT** knock on any walls, desk, attempt to talk to other youth, whistle or make noise while I am in my room.

9. I will **NOT** lie down or sleep in my room unless staff has permitted me to do so.

10. When eating in my room, I will **NOT** flush my toilet. I will return all meal items (tray, spoons) in the condition in which they were given. I am **NOT** to have or hide food and or beverage packets in my room. I will return all wrappers, stickers and cartons to staff. Failure to do so may result in disciplinary action(s).

11. I will **NOT** plug my toilet with anything, or take water out of it. I will use my toilet for what it is intended for and will **NOT** use it as a chair or a place to sleep.

12. For my safety, I will not stand up on my sink, desk, and/or bunk.

13. I will **NOT** write, scratch, carve or damage anything in my room. I understand that if I damage anything in the facility, I may be charged for the damage.

14. While in my room, I may sit on my bunk or the stool at my desk. I will not sit on the floor or the other bunk in the room.

15. After lights are turned out I am to lie down on my bunk to go to sleep. I am not allowed to read or talk after lights are out for the day.

22. The aforementioned YCJDC, and the Policy Making Defendants know that they may not institute, enforce or permit enforcement of a policy or practice of demeaning and unconstitutional deprivations, discipline and sub-standard conditions of confinement.

23. The Defendants' written and/or *de facto* policy, practice and custom mandating wholesale implementation of demeaning and unconstitutional deprivations, discipline and sub-standard conditions of confinement and has been promulgated, effectuated and/or enforced in bad faith and contrary to clearly established law.

24. Upon information and belief, the aforementioned YCJDC and Policy Making Defendants have promulgated, implemented, enforced, and/or failed to rectify a written and/or *de facto* policy, practice or custom of demeaning and unconstitutional deprivations, discipline and sub-standard conditions of confinement and Pursuant to this written and/or *de facto* policy, each member of the Class, including the named Plaintiffs, were the victims of these deprivations and substandard conditions of confinement upon their entry into their YCJDC.

25. As a direct and proximate result of these violations, carried out pursuant to the written and/or *de facto* policy, the victims of these unlawful deprivations and substandard conditions of confinement – each member of the class, including the named Plaintiff(s) – have suffered or will suffer psychological pain, humiliation, suffering and mental anguish.

### Facts Applicable to the Named Plaintiff J.E.

26. J.E. entered the YCJDC on the following dates: July 25, 2018 and was

released in Spring 2019. J.E. timely filed a tort claim notice November 20, 2018.

27. On a daily basis, there was no reasonable or rational basis to deny him a pillow, deny him mental health medications, deny adequate and edible food and adequate water, disciplined for direct eye contact with staff or raising arms above waist an suffered significant weight loss. As a direct and proximate result of these unlawful policies adhered to and conducted pursuant to County and Sheriff's Department policy, practice and custom, J.E. has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

### Facts Applicable to the Named Plaintiff A.E.

28. A.E. entered the YCJDC on the following dates: September 6-18, 2018 and A.E. timely filed a tort claim notice November 14, 2019.

29. On a daily basis, there was no reasonable or rational basis to deny her a pillow, deny adequate and edible food and adequate water, inadequate feminine hygiene, limited toilet paper, wait up to an hour for soft soap, lice, disciplined for direct eye contact with staff or raising arms above waist, and suffered significant six-pound weight loss. As a direct and proximate result of these unlawful policies adhered to and conducted pursuant to County and Sheriff's Department policy, practice and custom, A.E. has

suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -- Fourth and Eighth Amendment Violations and Failure to Implement Municipal Policies to Avoid Constitutional Deprivations Under of Color of State Law

**30.** The Fourth Amendment of the United States Constitution protects citizens from unreasonable treatment and excessive force by law enforcement officers, and prohibits officers from using force and intimidation and compulsory strenuous exercise and substandard housing , no pillows, inadequate food and water and medicine.  The Eighth Amendment does so for sentenced juveniles.  The First Amendment prohibits a state actor, here Yamhill County, from unreasonable abridging the Free Speech and Expression of its citizens, including juveniles, by arbitrarily prohibiting verbal, written and behavioral expressive rights including non-threatening bodily movements. The actions of Defendants detailed above violated Plaintiff's rights under the United States Constitution. Simply put, it was not objectively reasonable YCJDC Officers to deprive Plaintiffs and class members of First and Fourth Amendment rights and basic needs such as adequate

and proper food, water, pillows, freedom from compelled strenuous exercise, from physical, mental and emotional abuse.

31. It was also not objectively reasonable for the Policy Making Defendants to order/ direct County Corrections Officers to implement such policies.

32. These deprivations and deplorable conditions confinement were implemented pursuant to the policy, custom or practice of the Counties and the County's Department. As such, the Counties are directly liable for the damages of the named Plaintiffs and members of the Class.

33. Upon information and belief, the aforementioned Director and Division Manager are responsible for establishing the policies and procedures to be utilized in the operation of their YCJDC, and are responsible for the implementation of the customs, and policies questioned in this lawsuit. As such, the Sheriff is individually responsible for the damages of the named Plaintiff(s) and members of the Class.

34. Named individuals knew that said policies were illegal, and acted willfully, knowingly, and with specific intent to deprive Plaintiffs and members of the Class of their Constitutional rights.

35. This conduct on the part of all Defendants represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.                               . As a direct and proximate result of the unconstitutional acts described above, Plaintiffs and members of the proposed class have been irreparably injured.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

\-                    **Demand for Declaratory Judgment**

Plaintiffs incorporate by reference and realleges each and every allegation stated in paragraphs 1 through 35.

36. The policy, custom and practice of the County Departments, the Counties and the Policy Making Defendants are clearly unconstitutional, in that these entities and individuals are mistreating juvenile detainees /individuals placed into the YCJDC.. Plaintiffs and members of the Class request that this Court issue a declaratory judgment, and that it declare such policies of the County and the County  Departments to be unconstitutional.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### -- Demand for Preliminary and Permanent Injunction

**37.** Plaintiffs incorporate by reference and realleges each and every allegation stated in paragraphs 1 through 35. .The policy, custom and practice of the County Departments, the Counties and the Policy Making Defendants are clearly unconstitutional, in that these entities and individuals are directing/implementing  these deprivations and indignities for everyone placed into their YCJDC.

38. Upon information and belief, this policy is currently in place at the named YCJDC, with new and/or prospective members of the Class being subjected to the harms that have already been inflicted upon the named Plaintiff(s).

39. The continuing pattern of deprivations and demeaning  conditions of confinement will cause irreparable harm to the new and/or prospective members of the Class, an

adequate remedy for which does not exist at law.

40. Plaintiffs demand that the County, the County Departments, the Policy Making Defendants and County Corrections Officers immediately desist from implementing said draconian policies and practices and seek both a preliminary and permanent injunction from this Court ordering as much.

## DEMAND FOR PUNITIVE DAMAGES

41. The actions of the Individual Defendants detailed herein are outrageous, in that they continue to propagate an illegal deprivations and deplorable conditions of confinement policy even though they know for a fact that their actions are unconstitutional.

42. It is clear that the Policy Making Defendants, the Counties and the County Departments and all other named defendant counties have no respect for the civil rights of individual citizens or for the rule of law.  Consequently, an award of punitive damages is necessary to punish the Policy Making Defendants, and to send a message to them that the requirements of the United States Constitution also apply to government officials in all named counties.

## DEMAND FOR TRIAL BY JURY

43.  Plaintiff(s) request trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs J.E. and A.E.., et al. on behalf of themselves and on behalf of a class of others similarly situated, request that this Honorable Court grants them the following relief:

A. An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.

B. A judgment against all Defendants, jointly and severally on Plaintiffs' First Cause of Action detailed herein, awarding Compensatory Damages to each named Plaintiff and each member of the proposed class in an amount to be determined by a Jury and/or the Court on both an individual and a class wide basis.

C. A judgment against each individual Defendant on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages for each.

D. A declaratory judgment against all Defendants declaring the aforementioned Counties and County Departments' policies, practices and customs of implementing deprivations and deplorable conditions of confinement upon all detainees entering the respective County YCJDC detention center, to be unconstitutional and improper.

E. A preliminary and permanent injunction enjoining Defendants from continuing to implement theses policies and customs

F. A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 23

                                              Respectfully submitted by:

                                              S//S Leonard R. Berman

Dated: November 15, 2019                        _____

                                              Leonard R. Berman, OSB # 96040
                                              **ATTORNEY FOR PLAINTIFFS AND THE PROPOSED CLASS**